Filed 6/20/25  P. v. Patrick CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C099774 |
| Plaintiff and Respondent, | (Super. Ct. Nos. STK-CR-FE-2005-0009835, SF097472A) |
| v. | |
| NICHOLAS PATRICK, | |
| Defendant and Appellant. | |

In 2007, the People jointly tried defendant Nicholas Patrick and a codefendant for the murder of two people.  Patrick was convicted of both murders; his codefendant was not convicted of any charges.  In 2022, after the Legislature revised the definition of felony murder (Stats. 2018, ch. 1015, § 3; Pen. Code, § 189, subd. (e)), Patrick filed a petition seeking to have his murder convictions vacated pursuant to what is now Penal

1

Code section 1172.6.[1]  The trial court denied the petition without holding an evidentiary hearing, concluding that Patrick failed to demonstrate a prima facie entitlement to relief.

On appeal, Patrick contends that the trial court erred in this conclusion, arguing that the jury verdicts in this case do not conclusively foreclose resentencing relief.  The People maintain that the jury's true finding that Patrick personally discharged a firearm causing great bodily injury or death establishes that Patrick was the "actual killer."  The People have the better argument.

BACKGROUND

We draw the facts of Patrick's offense and trial from the appellate record in Patrick's direct appeal (case No. C056728), which we incorporated by reference at Patrick's request.

In an information filed in January 2006, the People charged Patrick and his codefendant with two counts of murder (§ 187) of James Fullard, Jr., and Doretha Moore, and one count of robbery with Fullard as the named victim (§ 211).  The People also alleged two special circumstances:  that the defendants committed multiple murders (§ 190.2, subd. (a)(3)) and that the murders were committed while the defendants were engaged in the commission of a robbery (§ 190.2, subd. (a)(17)(A)).  As to the robbery count, the information alleged under section 12022.53, subdivision (d) that both defendants personally and intentionally discharged a firearm proximately causing great bodily injury to both Fullard and Moore.

At trial, Patrick and his codefendant both testified that they got into the back seat of a car, with the two victims sitting in the front seats.  Patrick and his codefendant each testified that the other then shot the victims.  A pathologist testified that the male victim was shot twice and the female victim three times.  The pathologist considered both shots

---

[1]  Undesignated statutory references are to the Penal Code.

to the male victim to have been fatal; two of the shots to the female victim were fatal or "potentially fatal" and one was nonfatal. A criminalist testified that all five bullets were fired from a single gun, a revolver. The criminalist also testified that the shots were fired from the middle of the back seat of the car, which meant that either of the two defendants could have fired the shots.

As relevant here, the trial court instructed Patrick's jury on multiple theories of murder, including malice murder and a robbery-murder theory of felony murder. The court also instructed the jury on aiding and abetting. The jury was not instructed on the natural and probable consequences doctrine. With respect to malice murder, the jury was instructed that in order to prove that Patrick was guilty of murder, "the People must prove that: [¶] 1. A defendant committed an act that *caused the death of (another person)*; [¶] AND [¶] 2. When the defendant acted, (he) had a state of mind called malice aforethought." (Italics added.)

The felony-murder instruction stated: "The defendant[s] are charged in Counts 1 and 2 with murder, under a theory of felony murder. [¶] To prove that a defendant is guilty of first degree murder under this theory, the People must prove that: [¶] 1. A defendant committed Robbery; [¶] 2. A defendant intended to commit Robbery; [¶] AND [¶] 3. While committing a Robbery, a defendant did an act that *caused the death of another person.* [¶] A person may be guilty of felony murder even if the killing was unintentional, accidental, or negligent." (Italics added.)

With respect to the firearm discharge allegation, the court instructed the jury with CALCRIM No. 3150, instructing the jury that: "If you find the defendant guilty of the crimes charged you must then decide whether, for each crime, the People have proved the additional allegations that the defendant personally and intentionally discharged a firearm during those crimes and, if so, whether the defendant's act caused (great bodily injury/or death). You must decide whether the People have proved these allegations for each crime and return a separate finding for each crime. [¶] To prove that the defendant

3

intentionally discharged a firearm, the People must prove that:  [¶]  1. The defendant personally discharged a firearm during the commission of that crime;  [¶]  AND  [¶] 2. The defendant intended to discharge the firearm.  [¶]  If the People have proved both 1 and 2, you must then decide whether the People also have proved that the defendant's act *caused great bodily injury to/or the death of a person*."  (Italics added.)

Patrick's jury found him guilty of two counts of first degree murder and one count of robbery.  The jury did not indicate whether it based its first degree murder verdict on a theory of malice murder or felony murder.  The jury found true the two special circumstances alleged.  As to each count it also found true the allegations that Patrick "intentionally and personally discharged a firearm, to-wit:  a handgun, and caused great bodily injury or death" to each victim, "within the meaning of Penal Code section 12022.53[, subdivision] (d)."  The codefendant's jury acquitted the codefendant of all charges.  We affirmed Patrick's judgment on appeal.  (*People v. Patrick* (Apr. 7, 2009, C056728) [nonpub. opn.].)

In May 2022, Patrick filed a petition for resentencing under what is now section 1172.6.  The trial court appointed counsel for Patrick and entertained briefing.  After considering the jury instructions, the verdicts, this court's opinion on direct appeal, and the evidence introduced at trial, the trial court denied the petition, concluding that Patrick had "failed to make a credible prima facie showing that he may be entitled to be resentenced pursuant to . . . [s]ection 1172.6."

Patrick timely appealed.

DISCUSSION

I

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) "altered the substantive law of murder in two areas.  First, with certain exceptions, it narrowed the application of the felony-murder rule by adding section 189, subdivision (e) to the Penal Code.  (Stats. 2018, ch. 1015, § 3.)  Under that provision, 'A

4

participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' (§ 189, subd. (e).) [¶] Second, Senate Bill 1437 imposed a new requirement that, except in cases of felony murder, "a principal in a crime shall act with malice aforethought" to be convicted of murder. (§ 188, subd. (a)(3).)" (*People v. Curiel* (2023) 15 Cal.5th 433, 448-449 (*Curiel*).)

Senate Bill 1437 also added a procedure, now codified in section 1172.6, to permit individuals convicted of murder under prior law to ask the trial court to vacate their conviction and resentence them. (Stats. 2018, ch. 1015, § 4; *People v. Das* (2023) 96 Cal.App.5th 954, 959.) As relevant here, the statute provides that a person convicted of felony murder may file a petition to have his or her conviction vacated when: (1) the charges filed against the person allowed the prosecution to proceed on a theory of felony murder; (2) the person was convicted of murder after trial or accepted a guilty plea in lieu of a trial at which he or she could have been convicted of murder; and (3) the person could not presently be convicted of murder because of changes to section 189 made effective January 1, 2019. (§ 1172.6, subd. (a)(1)-(3).) After the appointment of counsel and the opportunity for briefing, the trial court may turn to consideration of the record of conviction to determine whether " 'the petitioner makes a prima facie showing that he or she is entitled to relief.' (§ 11[72.6], subd. (c).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) If the petition and record "establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).) If instead the petition shows a prima facie entitlement to

5

relief, the court must issue an order to show cause and hold an evidentiary hearing at which the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is guilty under a still-valid theory of murder. (*Id*. at pp. 708-709; § 1172.6, subds. (c), (d)(1) & (3).) If the prosecution fails to carry its burden, the challenged conviction and any accompanying allegations or enhancements must be vacated and the petitioning defendant resentenced on any remaining charges. (§ 1172.6, subd. (d)(3).)

A trial court's inquiry into whether a petitioner has stated a prima facie case for relief is "limited." (*Lewis, supra*, 11 Cal.5th at p. 971.) "At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record. [Citation.] And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense." (*Curiel, supra*, 15 Cal.5th at p. 463; see also *People v. Patton* (2025) 17 Cal.5th 549, 565, fn. 8 [§ 1172.6 relief not foreclosed "at the prima facie stage unless the at-issue jury findings 'conclusively establishe[d] every element of the offense' under a valid theory"].) "[W]e may look to the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction refutes the factual allegations in [a defendant]'s petition." (*Curiel*, at p. 465.) But courts must determine whether a petitioner has made out a prima facie case without engaging in " ' "factfinding involving the weighing of evidence or the exercise of discretion." ' " (*Patton*, at p. 563.) We review de novo a trial court's decision to deny a section 1172.6 petition at the prima facie stage. (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

## II

Patrick contends that the trial court erred in denying his petition at the prima facie stage. The People respond that the jury's findings that he discharged a firearm causing great bodily injury or death to each victim conclusively establish his ineligibility for relief. We agree with the People.

6

In this case, it is undisputed that the jury's verdicts finding Patrick guilty of first degree murder and finding true the robbery-murder special-circumstance allegations do not conclusively refute the allegations in his resentencing petition. Patrick's jury was instructed on felony murder and the robbery-murder special-circumstance allegation before the Legislature's revisions to the felony-murder rule and the California Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. And our state Supreme Court has made clear that a jury's felony-murder special-circumstance findings before *Banks* and *Clark* "do not preclude [a defendant] from making out a prima facie case for resentencing under section 1172.6." (*Strong, supra*, 13 Cal.5th at p. 721.) The People properly do not contend otherwise.

The People contend instead that the jury's true findings that Patrick personally discharged a firearm under section 12022.53, subdivision (d) conclusively establish that he was the actual killer of both victims within the meaning of section 189, subdivision (e)(1). In the People's view, the jury's findings that Patrick personally discharged a firearm necessarily mean that jurors found that he personally killed the victims because the prosecution's theory at trial was that only one of the defendants killed the victims, the evidence showed that only one gun was used, and each defendant testified that the other was the shooter.

We agree that the jury's true finding on the firearm discharge enhancements means the jury necessarily determined that Patrick was the actual killer. Because the undisputed evidence reflects that both victims died as a result of the firearm discharge and that there was only one shooter, whoever fired the gun personally killed the victims. Thus, there is really no dispute that Patrick's act of discharging the weapon resulted in the victims' death. We do not agree with the distinction drawn by our dissenting colleague that because the instructions and verdict forms required the jury to determine whether Patrick's personal and intentional discharge of a firearm caused great bodily injury *or* death, its true finding on the firearm discharge allegations are not reflective of the jury's

7

conclusion. Again, it is clear the firearm discharge caused death and the jury found that Patrick was the person who fired the gun. For our purposes, because the uncontested evidence is that there was only one shooter, whoever fired the gun *caused the victims' deaths*.

At oral argument, counsel for Patrick argued that it was improper for the trial court, and for this court, to consider the effect of the jury's findings at the prima facie stage of proceedings. We disagree. Our Supreme Court has approved this procedure in *Curiel*: "[W]e may look to the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction refutes the factual allegations in Curiel's petition. (See *Lewis, supra*, 11 Cal.5th at p. 971.) If the jury has made a factual finding, and it is issue preclusive under the principles described above, a court must give effect to that finding. (See *ibid*.) A court giving effect to such a finding does not engage in ' "factfinding involving the weighing of evidence or the exercise of discretion." ' (*Id*. at p. 972.) It is simply 'distinguish[ing] petitions with potential merit from those that are clearly meritless' based on findings already made by the jury. (*Id*. at p. 971; see *Strong, supra*, 13 Cal 5th at p. 710.)" (*Curiel, supra*, 15 Cal.5th at p. 465.)

As we conclude below, we find issue preclusion applies here.

Before we address issue preclusion, we address Patrick's argument that the jury's true finding on the section 12022.53, subdivision (d) enhancements did not establish that he acted with malice aforethought or that he was the actual killer. In making this argument Patrick relies on *People v. Offley* (2020) 48 Cal.App.5th 588. In *Offley*, the trial court found Offley ineligible for relief under section 1172.6 because the record showed that the jury found Offley intentionally fired a weapon at the victim and caused great bodily injury or death pursuant to section 12022.53, subdivision (d). (*Offley*, at p. 594.) The Court of Appeal reversed because the jury had been instructed on the natural and probable consequences doctrine and it could not rule out the possibility that Offley was convicted on an imputed malice theory notwithstanding the true finding on the

8

firearm enhancement.  (*Id*. at pp. 598-599.)  But here the jury was not instructed on the natural and probable consequences doctrine.  Under the jury instructions given in this case, and based on the jury's verdicts, in order to find Patrick guilty of first degree murder and the firearm allegations true, the jury had to have found Patrick was the perpetrator acting with malice and that he was the actual killer.

We also do not find the issue of proximate causation that existed in *People v. Bland* (2022) 28 Cal 4th 313 present here.  Bland and his codefendant both fired into a car full of people.  Two victims were shot but survived, a third victim died of a gunshot wound to his chest.  A jury convicted Bland of first degree murder and two counts of premeditated attempted murder.  As to each count, the jury also found true an allegation pursuant to section 12022.53, subdivision (d), that Bland " 'intentionally and personally discharged a firearm and proximately caused great bodily injury . . . or death to any person other than an accomplice. . . .' " (*Bland*, at p. 318.)  The trial court instructed the jury on the statutory elements of all charges and enhancements, including instructing the jury on section 12022.53, subdivision (d), but it did not define the term "proximately caused" in relation to the firearm discharge enhancement.  On appeal, Bland argued that the trial court had a sua sponte duty to define proximate causation for the jury, and that its failure to do so was prejudicial.  (*Bland*, at p. 334.)  The appellate court, noting that "the 'evidence was not clear as to which of the two, defendant or his cohort, fired the shots that hit each of the three victims,' " concluded that " 'without a proper definition of proximate cause, the jury could have found the enhancement true without determining that a bullet fired by defendant struck a victim' " and reversed.  (*Ibid*.)  Our Supreme Court agreed, determining that "proximate causation *does* have a meaning peculiar to the law, and that a jury would have difficulty understanding its meaning without guidance." (*Id*. at p. 335.)  It thus concluded that the trial court erred in not defining proximate causation.  (*Ibid*.)

9

While *Bland* held that personally discharging a firearm and proximately causing the victims' deaths is not necessarily the same as a finding that one personally inflicted harm on the victims (*People v. Bland, supra*, 28 Cal.4th at pp. 336-338), we believe it does mean the same under the facts of the case before us. Again, the undisputed evidence, acknowledged by Patrick, revealed the existence of only one firearm and one shooter. Based on the facts of this case, proximate causation is not an issue.

As referenced above, our Supreme Court recently examined the preclusive effect of a jury's finding in section 1172.6 proceedings in *Strong, supra*, 13 Cal.5th 698 and *Curiel, supra*, 15 Cal.5th 433. In *Strong*, the Supreme Court "rejected the argument that section 1172.6 categorically prohibited the consideration of factual findings made by a jury in the defendant's underlying trial. [Citation.] [The *Strong* court] reasoned that 'the structure of the statute—which permits trial courts to consult the record of conviction to determine whether the defendant has made out a prima facie case of eligibility [citation], and which notably does not open resentencing to every previously convicted murder defendant—strongly suggests the Legislature contemplated that many, and perhaps most, such findings would be given effect on resentencing.' " (*Curiel*, at p. 451, citing *Strong*, at p. 715.) Furthermore, "Because the resentencing statute itself does not prohibit the consideration of jury findings—and in fact affirmatively contemplates it—[the Supreme Court] determined that general principles of issue preclusion informed our consideration of the effect of prior jury findings in a resentencing proceeding under section 1172.6. (*Strong, supra*, 13 Cal.5th at pp. 715-716.)" (*Curiel*, at p. 451.)

" 'As traditionally understood and applied, issue preclusion bars relitigation of issues earlier decided "only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally,

the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." ' [Citation.] 'The party asserting [issue preclusion] bears the burden of establishing these requirements.' " (*Curiel, supra*, 15 Cal.5th at pp. 451-452.)

The doctrine of issue preclusion " 'is grounded on the premise that "once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." [Citation.]' " (*Curiel, supra*, 15 Cal.5th at p. 451.) We find *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227 (*Beaudreaux*), instructive. Like the case before us, Beaudreaux and his codefendant were charged with first degree murder and attempted robbery. They were also both charged with allegations that a principal was armed with a firearm (§ 12022, subd. (a)(1)) and only Beaudreaux was charged with personally and intentionally discharging a firearm causing great bodily injury and death (§ 12022.53). The jury was instructed with murder, felony murder, and attempted robbery. (*Beaudreaux*, at p. 1233.) If it found Beaudreaux guilty of the crimes charged against him, it was to consider the firearm use allegations in accordance with the following guidance: " 'To prove that the defendant intentionally discharged a firearm, the People must prove that: [¶] 1. The defendant personally discharged a firearm during the commission of that crime; [¶] AND [¶] 2. The defendant intended to discharge the firearm. [¶] If the People have proved both 1 and 2, you must then decide whether the People also have proved that the defendant's act *caused the death of a person*.' (Italics added.)" (*Id*. at p. 1234.) The jury found Beaudreaux guilty of all charges and found the firearm use allegations true. (*Ibid*.)

After Senate Bill 1437 went into effect, Beaudreaux filed two petitions for resentencing. Ultimately, the trial court denied the first petition without appointing counsel or allowing for briefing based on the determination that Beaudreaux had failed to state a prima facie case for relief. The trial court denied the second petition, again

11

without appointing counsel or entertaining briefing, on the basis that Beaudreaux was not entitled to litigate a second petition. (*Beaudreaux, supra*, 100 Cal.App.5th at p. 1235.)

On appeal, our colleagues in Division Four of the First Appellate District concluded that although the evidentiary record of the trial was not before them, they had "the legal framework that governed the trial in the form of the jury instructions and the adjudicated results of the trial in the form of the jury's verdicts and findings" and based on such concluded "the jury found that Beaudreaux 'personally and intentionally discharge[d] a firearm and caused great bodily injury and death to [victim].' " (*Beaudreaux, supra*, 100 Cal.App.5th at p. 1240.) Relying on *Strong* and *Curiel*, the *Beaudreaux* court noted that "As the Supreme Court has now twice pointed out, 'a relevant jury finding is generally preclusive in section 1172.6 proceedings, i.e., it "ordinarily establish[es] a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude[s] the defendant from making a prima facie case for relief." ' (*Curiel, supra*, 15 Cal.5th at pp. 453-454, quoting *Strong, supra*, 13 Cal.5th at p. 710.)" (*Id*. at p. 1241.) " '[I]t is difficult to foresee a situation in which a relevant jury finding, embodied in a final criminal judgment, would not meet the traditional elements of issue preclusion' in this setting. (*Curiel*, at p. 454.)" (*Ibid*.)

Here, when comparing the underlying prosecution of Patrick to the section 1172.6 proceedings, we note that the parties are the same, and "the contested factual issues actually and necessarily decided within each proceeding are identical." (*Beaudreaux, supra*, 100 Cal.App.5th at p. 1241.) Patrick had "the incentive and opportunity" at the underlying trial, to litigate the issue of whether he personally shot the victims. (*Ibid*.) The jury found that he did. We thus conclude Patrick is bound under the doctrine of issue preclusion by the jury findings that he personally and intentionally discharged a firearm that caused the death of the victims. Like the trial court and our colleagues in *Beaudreaux*, we read those findings as determining that the jury necessarily found Patrick

12

to be the actual killer.  We are confident this is not a case involving imputed malice and Patrick could still be convicted of murder despite the changes to section 188 or 189.

DISPOSITION

The order denying Patrick's petition under section 1172.6 is affirmed.


_____/s/_____<br>
EARL, P. J.

I concur:


_____/s/_____<br>
BOULWARE EURIE, J.

FEINBERG, J., Dissenting.

I agree with the majority that principles of issue preclusion provide the relevant framework for this appeal. (Maj. opn. *ante*, at pp. 8, 10-12; *People v. Curiel* (2023) 15 Cal.5th 433, 451 (*Curiel*).) Under these principles, a party generally may not relitigate an issue that was actually litigated and necessarily decided by a now-final decision in an earlier proceeding. (*Curiel*, at pp. 451-452 [setting out elements of doctrine].) I also agree with my colleagues that the jury's true findings that defendant Nicholas Patrick personally and intentionally discharged a firearm are issue preclusive and that Patrick is bound by those findings. (Maj. opn. *ante*, at pp. 8, 12.) But I respectfully disagree with the majority's conclusion that the jury's true findings encompass a factual determination that Patrick was "the actual killer" within the meaning of Penal Code section 189, subdivision (e)(1).[1] (Maj. opn. *ante*, at pp. 7, 12-13.) The jury's true findings on the firearm enhancements therefore cannot conclusively establish that Patrick is ineligible for relief, and the trial court thus erred in denying Patrick's petition at the prima facie stage.

As the majority notes, our state Supreme Court's decision in *Curiel* concluded that a court reviewing a petition under section 1172.6 "may look to the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction refutes the factual allegations" in a defendant's resentencing petition. (*Curiel*, *supra*, 15 Cal.5th at p. 465; maj. opn. *ante*, at p. 8.) But in language the majority does not discuss, *Curiel* states that, to find a petitioning defendant ineligible for relief at the prima facie stage, "regardless of the facts, the jury must have made the required finding based on the instructions provided by the trial court." (*Curiel*, at p. 467.) The "question is not whether it is *likely* a defendant" committed the offense in a way that no longer qualifies as murder, "but whether the court's jury instructions foreclose that possibility *as a matter*

---

[1] Undesignated statutory references are to the Penal Code.

1

*of law*. Only in the latter scenario would a trial court be permitted to deny a defendant's section 1172.6 petition at the prima facie stage. [Citation.] In other words, only in that scenario would the record of conviction 'establish conclusively that the defendant is ineligible for relief.' " (*Id.* at p. 470 [inquiry "is to identify what [the jury's] factual findings are and how they relate to the elements of murder under a valid theory"].)

Examining the firearm enhancement instruction in this case, Patrick's jury was not required to find that he was the actual killer. The instruction told jurors to decide if Patrick: (1) "personally discharged a firearm during the commission of" the crimes; (2) "intended to discharge the firearm"; and (3) "caused *great bodily injury to/or* the death" of each victim. (Italics added.) When the jury found the allegation true with respect to each victim, its verdicts stated that Patrick "intentionally and personally discharged a firearm . . . and caused *great bodily injury or* death." (Italics added.) The jury therefore was not asked to, and did not necessarily, find that Patrick's discharge of a firearm *killed* the victims.

It is true that the jury's murder verdicts reflect a finding that both victims died, but even assuming that the jury found that Patrick's firearm discharge caused not just bodily injury but the victims' deaths, the jury still did not necessarily find that Patrick was "the actual killer" as that term is understood under section 189, subdivision (e)(1). An "actual killer" "personally killed the victim." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 17.) But a firearm enhancement under section 12022.53, subdivision (d) does not require a finding that a defendant personally inflicted harm. Rather, as the majority acknowledges (maj. opn. *ante*, at pp. 9-10), the statute (at the time of Patrick's trial, as now) allows an enhanced sentence when a defendant "personally and intentionally discharges a firearm and *proximately causes* great bodily injury, as defined in Section 12022.7, or death, to a person other than an accomplice." (§ 12022.53, subd. (d), italics added.) And as our Supreme Court explained in *People v. Bland* (2002) 28 Cal.4th 313, 336, "[p]roximately causing" within the meaning of this provision and "personally inflicting harm are two

2

different things." " 'A proximate cause of great bodily injury or death is an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the great bodily injury or death and without which the great bodily injury or death would not have occurred.' " (*Id.* at p. 335; see *id.* at p. 336.) Accordingly, a "person can proximately cause a gunshot injury without personally firing the weapon that discharged the harm-inflicting bullet." (*Id.* at p. 337.) "The enhancement applies so long as [the] defendant's personal discharge of a firearm was a proximate, i.e., a substantial, factor contributing to the result." (*Id.* at p. 338; see also *id.* at p. 337 [both of two defendants firing gun can be found to have proximately caused victim's death even if only one of their guns fired the fatal shot].)

In this case, the jury instructions on the firearm enhancements did not define the meaning of the phrase "defendant's act caused great bodily injury to/or the death of a person," but the jury's verdicts found that Patrick personally and intentionally discharged a firearm "within the meaning of Penal Code section 12022.53[, subdivision] (d)." (Maj. opn. *ante*, at p. 4.) Consistent with that statute, the trial court said at sentencing that the jury had found that Patrick "personally and intentionally discharged a firearm, which proximately caused great bodily injury or death." *Bland* makes clear that such a finding—that Patrick personally and intentionally discharged a firearm and proximately caused injury or death—is not necessarily the same as a finding that he personally inflicted harm on the victims. (*People v. Bland*, *supra*, 28 Cal.4th at pp. 336-338.)

The majority agrees that *Bland* held that personally discharging a firearm and proximately causing death is not necessarily the same as a finding that a defendant personally inflicted harm on the victims. (Maj. opn. *ante*, at p. 10.) The majority nevertheless concludes that the two are the same under the facts of the case before us and that proximate causation is not relevant based on those facts. (Maj. opn. *ante*, at p. 10.) I respectfully disagree because, as the majority acknowledges (maj. opn. *ante*, at p. 6), at the prima facie stage of a resentencing proceeding, a court may not weigh the facts

3

adduced at trial. (See, e.g., *People v. Patton* (2025) 17 Cal.5th 549, 563.) Rather, under *Curiel*, courts determine whether a jury finding forecloses eligibility for relief "regardless of the facts." (*Curiel*, *supra*, 15 Cal.5th at p. 467; see also *id.* at pp. 465-470 [comparing jury instructions against elements of still-valid theory of murder].)

The Attorney General disclaims reliance on facts, arguing instead that affirmance is required because the "prosecutor's theory of the case" was that there was only one shooter. But for the same reason that we cannot evaluate facts at the prima facie stage, we are not permitted to look behind the jury instructions and verdicts and rely on the "prosecutor's theory of the case," which, as the Attorney General's argument appears to at least implicitly acknowledge, itself necessarily depends on evidence at trial. That means that, here, we cannot weigh the evidence for ourselves and determine whether the jury likely thought that Patrick fired all the shots or, say, fired only the nonfatal shot at the female victim before handing the gun to his codefendant, who then actually killed the victims. (See *Curiel*, *supra*, 15 Cal.5th at p. 467.)

That is true even if the People's argument and each defendant's testimony pointing to the other as the shooter suggests agreement that only one person shot and killed the victims. (Maj. opn. *ante*, at pp. 7-8.) Even if the parties argued that only one or the other of the defendants shot at the victims, the jury was not required to accept that as so. To the contrary, the jury was specifically instructed that it was entitled to "believe all, part, or none of any witness's testimony." (See *People v. Lopez*, *supra*, 78 Cal.App.5th at p. 19 [noting jury can believe all, part, or none of witnesses' testimony].) And because, for the reasons explained above, Patrick's jury was not *required* to find that Patrick fired the fatal bullets when it considered whether the firearm enhancements were true, we may not assume that it did. (*Curiel*, *supra*, 15 Cal.5th at p. 467 [looking at what findings the jury "must have made" and stating that court "must be confident the jury *necessarily* found" the elements of a still-valid theory of murder].)

4

I also respectfully disagree with my colleagues' reliance on *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227. (Maj. opn. *ante*, at pp. 11-12.) In that case, our colleagues in the First Appellate District, Division Four held that a defendant found to have personally and intentionally discharged a firearm under section 12022.53, subdivision (d) could not establish a prima facie case for resentencing under section 1172.6. (*Beaudreaux*, at pp. 1244-1248.) Unlike here, the jury in *Beaudreaux* found that the defendant's discharge of a firearm " 'caused great bodily injury *and* death' " to the victim. (*Id.* at pp. 1234, 1240, italics added; see also *id.* at p. 1234 [jury instructed to find whether the prosecution " 'proved that the defendant's [firearm discharge] *caused the death of a person*' "].) In addition, in *Beaudreaux*, the "dispositive considerations" for the court were that the jury instructions supplied no basis on which the jury could have convicted Beaudreaux as an aider and abettor and that Beaudreaux's codefendant was not alleged to have personally discharged a weapon. (*Id.* at p. 1247.) The opposite is true here: the jury in Patrick's case was instructed on aiding and abetting theories of liability, and Patrick's codefendant was charged with personally and intentionally discharging a firearm himself. Indeed, the prosecution in this case argued to Patrick's codefendant's jury that, in light of the physical evidence, it was *the codefendant* who shot the gun.

*Beaudreaux* also concluded that "no reasonable juror who found that Beaudreaux personally discharged his gun and caused great bodily injury and death might have believed [Beaudreaux's codefendant] personally did the same thing, with Beaudreaux only indirectly involved in the fatal act, but liable for it nonetheless. Stated in terms framed by the pivotal legal issue here, [the *Beaudreaux* court] believe[d] it would have been impossible on [the] record [before it] for a jury to have made the findings it did without finding that Beaudreaux was [the victim's] actual killer." (*People v. Beaudreaux*, *supra*, 100 Cal.App.5th at pp. 1247-1248, citing *In re Lopez* (2023) 14 Cal.5th 562, 591-592.) That reasoning appears to invoke a harmless error analysis, under which " ' "the reviewing court is not limited to a review of the verdict itself" ' " and " ' may look to "the

5

entire cause, including the evidence." ' " (*Curiel, supra*, 15 Cal.5th at p. 465, fn. 6; see also *People v. Jasso* (2025) 17 Cal.5th 646, 691 [even if " 'finding of personal use [of a firearm] would not in itself prove defendant was the actual killer' in cases involving multiple armed participants in the underlying felony," instructional error was harmless because "findings of personal use and intentional injury-or-death-causing discharge of a firearm necessarily imply a finding that [defendant] was the actual killer because there was no evidence that the robbery involved more than one armed participant or that [the victim] suffered any firearm-related injuries other than those inflicted by the fatal shots"].)  In *Curiel*, however, the court stated that its review of a section 1172.6 resentencing petition was "not governed by principles of harmless error" (*Curiel*, at p. 465), and the court expressly declined to "examine how, or even whether, these principles might apply in the context of a section 1172.6 resentencing petition" because no party urged their application in that case (*id.* at p. 465, fn. 6).  Here, too, no party maintains that harmless error analysis applies when considering whether a defendant has stated a prima facie case for resentencing under section 1172.6.  And under the framework that *Curiel* applied, we do not ask "whether it is *likely* a defendant" committed the offense in a way that no longer meets the definition of murder.  (*Curiel*, at p. 470.)  Rather, the question is "whether the court's jury instructions foreclose that possibility *as a matter of law*."  (*Ibid.*)  Because I do not believe that the jury verdicts and instructions have such an effect in this case, I would reverse the trial court's order with directions to issue an order to show cause and to hold an evidentiary hearing on Patrick's petition.  (§ 1172.6, subds. (c) & (d).)


                                         _____/s/_____
                                           FEINBERG, J.